

FILED
NOV 1 2012
CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| SHARON S. ASKEW <br><br> Plaintiff, <br><br> v. <br><br> 7-ELEVEN, INC. <br><br> Defendant. | Civil Action No. 2:12cv593 <br><br> COMPLAINT FOR DAMAGES <br> 29 U.S.C. § 621(ADEA) <br><br> (JURY TRIAL DEMANDED) |

Plaintiff Sharon Askew, by counsel, brings this complaint against 7-Eleven, Inc. for its violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. In support thereof, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. On February 11, 2010, Mrs. Askew filed a charge of discrimination with the Equal Employment Opportunity Commission alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq*. On August 7, 2012 Mrs. Askew received a right-to-sue letter after the EEOC issued a determination against the 7-Eleven. This case presents a federal question, and this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. Venue is proper within this District under 28 U.S.C. § 1391 because all or a substantial part of the events giving rise to Mrs. Askew's claims occurred in the Eastern District of Virginia.

## PARTIES

3. Sharon Askew is a 57 year old female who was employed by 7-Eleven from June 1982 until her termination in January 2010. For 26 of her 28 years at the Company, Mrs. Askew worked as a store manager for various 7-Eleven stores in the Hampton Roads area. During that time period, Mrs. Askew received approximately ten awards for outstanding achievement; received excellent ratings from her supervisors; and was asked to open and manage a new store in Portsmouth, Virginia where its sales numbers tripled in the first three years under her management. In 2007, Mrs. Askew's store was given the distinction of being a "training store" due to her exemplary performance as a store manager, an honor awarded to only four of the approximately 100 7-Eleven stores in the Company's Norfolk/Chesapeake market. Mrs. Askew planned to finish her career at 7-Eleven.

4. 7-Eleven, Inc. is a Texas corporation which does business in Virginia. Its principal place of business is located in Dallas, Texas. 7-Eleven's 6,000 plus stores in the United States are divided into regions or "zones," which are further divided into markets and finally into subgroups. Each subgroup consists of a group of stores, typically no more than eight, and is managed by a field consultant.

## FACTUAL ALLEGATIONS

5. 7-Eleven had a wage and hour problem in its Norfolk/Chesapeake market. This was the result of timekeeping violations throughout the region, most of which went unreported to the Company. Sharon Askew is one of many store managers who was involved in 7-Eleven's timekeeping issues.

6. The Company's wage and hour issues were the foreseeable consequence of its decision to reduce labor costs after the national financial crisis of 2008, by imposing unattainably-low labor cost quotas for its stores. Field consultants were put under tremendous pressure by Company management to ensure that labor quotas were not exceeded by store managers. For field consultants meeting the company-imposed labor quotas meant the difference between the field consultant receiving a performance bonus or disciplinary action. Because of this, some field consultants within the Norfolk/Chesapeake market took an "at all costs" approach when it came to controlling labor hours, including encouraging store managers to engage in making regular timekeeping adjustments in order to stay within company-imposed quotas.

7. Elaina Coggins was one those field consultants. Originally from the Company's corporate office, she was assigned to be the field consultant overseeing the eight stores within Sharon Askew's subgroup in 2006, when she was 35 years old. Like Coggins, six of the eight store managers who reported to her were also in their thirties and had limited experience.

8. Almost 20 years apart in age, Coggins and Sharon Askew were opposites. Coggins had a corporate pedigree. Mrs. Askew did not. Coggins had virtually no field experience. Mrs. Askew had a wealth of such experience. However, Coggins used her position of authority over Mrs. Askew to mask her own lack of experience and knowledge of the job. She found fault with insignificant details in Mrs. Askew's store. She avoided personal contact with Mrs. Askew, even though she was required to meet weekly with each manager. And she frequently demeaned and disparaged Mrs. Askew, including singling her out for criticism during meetings with other managers. Coggins treated Mrs. Askew this

way despite the fact that Mrs. Askew was by far the highest performer of all the managers in her subgroup. In contrast, Coggins regularly socialized with younger, lower-performing store managers within her group and did not treat them with the same degree of disrespect and derision.

9.   During Mrs. Askew's employment, 7-Eleven had an "official" policy that hourly employees must be paid for all time worked. 7-Eleven also had an "official" policy that employees were not permitted to work beyond their scheduled shift, without prior approval from the store manager. Coggins knew that these policies were unworkable in practice due to the actual labor demands at the stores under her management.

10.   Employees who worked under Mrs. Askew and the other stores within her subgroup routinely ignored the "official" policy by clocking-in before and working beyond scheduled shifts. 7-Eleven's timekeeping software, which was installed on a computer in each store manager's office, provided managers unlimited discretion to modify employee timesheets and thus an easy solution both to the Company's strict labor quotas and the issue of employees working beyond their scheduled shifts.

11.   7-Eleven's official timekeeping policies and practices within the stores under Coggins' management were consistently and widely violated. In 2008, Coggins instructed her store managers to begin deleting employee time entries whenever an employee clocked-in prior to his/her scheduled shift. Consistent with this instruction, store managers also modified and deleted employee time whenever an employee worked beyond his/her scheduled shift. Some managers deleted overtime hours worked by employees in a workweek, deleted hours that exceeded the manger's weekly labor quota, or changed overtime hours from "working" hours to "training" hours in the timekeeping system, which

did not count against the employee's 40 hour workweek for purposes of overtime compensation. Each of these practices violated 7-Eleven's official timekeeping policies.

**12.** Coggins was aware of these practices but did nothing to discourage them, notwithstanding that they violated official Company policy. She reviewed employee timesheets on a weekly basis, observed modifications to employee timesheets made by Mrs. Askew and other store managers, and regularly permitted the modification and deletion of time entries before the timesheets were forwarded to the corporate office.

**13.** Despite the fact that Mrs. Askew was Coggins' highest performer, Coggins advised Mrs. Askew in or around July 2009 that she wanted one of her protégés named Angela Silverthorne to assume management of Mrs. Askew's store. Silverthorne was at the time a manager of another 7-Eleven store under Coggins' supervision. Silverthorne was 37 years old and regularly socialized with Coggins outside of work.

**14.** In January 2010, Coggins was fortuitously presented with an opportunity to replace Mrs. Askew with Silverthorne. She received a complaint from one of Mrs. Askew's store clerks that Mrs. Askew was altering employee timesheets. After HR confirmed the validity of the complaint, Coggins seized the opportunity and terminated Mrs. Askew's employment, despite her prior knowledge and encouragement of time keeping manipulation. Upon being informed of her termination by Coggins, Mrs. Askew protested that Coggins had never before enforced the official timekeeping policies and that other managers in her subgroup were engaging in the exact same practice, a fact of which she knew Coggins was well aware. Coggins did not deny this fact; she admitted that other store managers under her management were engaging in the same practice, but said that her decision was final nevertheless. Coggins declined to provide Mrs. Askew an explanation

for this disparate treatment. Coggins replaced Mrs. Askew with Angela Silverthorne on January 15, 2010, the same day she terminated Mrs. Askew's employment.

**15.** 7-Eleven's response to Mrs. Askew's termination was prompt. However, instead of warning other managers that all future timesheet violations would result in similar adverse action, the Company issued a new "tiered" warning system for caught offenders. On the evening of Mrs. Askew's termination, the local human resources office sent an email to area field consultants advising that employees who verify payroll should not modify or adjust employee timesheets and that employees must be paid for all time worked. The email further instructed that any manager who violated the policy would receive a "final warning and the next violation will result in further disciplinary action up to and including termination from 7-Eleven." The "safe harbor" provided by the final warning was never offered to Mrs. Askew prior to her termination.

**16.** Several days after she terminated Mrs. Askew's employment, Coggins visited Mrs. Askew's former store to check on its operations. She met with the assistant manager, Evelyn Cates, and informed her about Mrs. Askew's termination and the circumstances which caused her to terminate Mrs. Askew's employment. When the assistant manager pointed out that other store managers regularly modified timesheets, just as Mrs. Askew had done, Coggins acknowledged the fact but offered no explanation for her decision to treat Mrs. Askew differently.

**17.** This was not the first complaint Coggins received from an employee regarding timesheet violations. In October 2008, a store clerk complained to Coggins that her store manager, Angela Silverthorne, the same manager with whom she later replaced Mrs. Askew, was deleting time from her timesheet and not paying her for time actually

worked. Coggins would not address the situation, so the employee complained to the Company's local human resources office, which promptly paid the employee for the time deleted by her store manager. Neither Coggins nor the human resources office took any disciplinary action against Silverthorne, who was 36 at the time of the occurrence.

**18.** Within two months of terminating Mrs. Askew's employment, Coggins began receiving employee complaints that Silverthorne was improperly modifying employee timesheets. Coggins once again refused to take disciplinary action against Silverthorne, even though she engaged in the exact same activity for which Mrs. Askew was terminated. Coggins failure to address the situation caused at least one employee to resign and another to request a transfer to a different store.

**19.** In or around February 2012, Ms Coggins received another employee complaint that a store manager, Camilla Sheppard, had deleted six hours of overtime from an employee's timesheet. Coggins told the employee she would take care of the issue. However, she failed to take any disciplinary action against Ms. Sheppard. Ms. Sheppard is 35.

**20.** Upon information and belief, Coggins has received other employee complaints regarding timesheet alterations, but did not take action against the offending store managers in those instances either.

**21.** In the six years Elaina Coggins has been a field consultant, she has supervised only one store manager who is significantly older in age than the other managers under her supervision. That store manager is Sharon Askew. In the six years Coggins has been a field consultant, she has received multiple employee complaints regarding store managers improperly modifying timesheets, likely because she encouraged

her store managers to do so. Yet in only one instance did Coggins take disciplinary action in response to an employee complaint. That was Sharon Askew. Mrs. Askew was Coggins' highest performer. She managed one of the most successful stores in the Norfolk/Chesapeake market. The sole reason for Coggins' disparate application of the timekeeping policy was Mrs. Askew's age. Such blatant conduct violates the ADEA.

## FIRST COUNT: AGE DISCRIMINATION

**22.** Mrs. Askew repeats and realleges paragraphs 1 through 21 of this Complaint as if fully set forth herein.

**23.** By the acts and practices described above, 7-Eleven violated the Age Discrimination in Employment Act. Payroll timekeeping policies and practices of 7-Eleven were consistently violated with the knowledge and approval of Elaina Coggins. Coggins received complaints that managers under her supervision other than Mrs. Askew were altering timesheets in violation of Company policy, both before and after Mrs. Askew's termination, but she chose not to take disciplinary action in those instances; instead, she encouraged it. She also encouraged Mrs. Askew to modify employee timesheets in order to reduce labor costs, but unlike her other, younger store managers, Coggins terminated Mrs. Askew for engaging in the very wage and hour practices she encouraged. Immediately after Mrs. Askew's termination, 7-Eleven issued an email directive providing that managers will receive a final warning for discovered timesheet violations. Mrs. Askew was not provided this courtesy. Coggins made good on her June 2009 threat and replaced Mrs. Askew with a younger store manager. Mrs. Askew was held to a different standard with respect to timekeeping policy, treated disparately, and sanctioned more severely than any other store

manager under Coggins' supervision, all of whom were close to Coggins' age (39) and substantially younger than Mrs. Askew.

**24.** 7-Eleven knew or showed a reckless disregard for the matter of whether its treatment of Mrs. Askew was prohibited by the ADEA.

**25.** As a direct and proximate result of 7-Eleven's acts, Mrs. Askew has suffered and will continue to suffer irreparable injury, monetary damage, and other compensable damages.

## PRAYER FOR RELIEF

PLAINTIFF RESPECTFULLY REQUESTS that the Court grant the following relief:

A. Award Askew compensation for back pay, including lost retirement benefits, and loss of earning capacity.

B. Award Askew front pay in an amount to be determined at trial.

C. Award Askew liquidated damages in an amount to be determined at trial for 7-Eleven's willful violation of the ADEA.

D. Award Askew her reasonable attorneys' fees, expenses, and costs.

E. Award Askew such interest as is allowed by law.

F. Grant such other relief, legal or equitable, as the Court deems appropriate.

TRIAL BY JURY IS DEMANDED.

SHARON S. ASKEW

By: _____
      Of Counsel

Reid H. Ervin, Esq. (VSB 01197)
rervin@reidervin.com
Joshua L. Jewett, Esq. (VSB 76884)
jjewett@reidervin.com
REID H. ERVIN & ASSOCIATES, P.C.
2400 Dominion Tower
999 Waterside Drive
Norfolk, Virginia 23510
Phone: (757) 624-9323
Fax:    (757) 624-8414